[No. 2323.  Decided November 30, 1896.]

THOMAS JOSE, *Appellant*, v. B. E. LYNCH, *Respondent*.

PARTNERSHIP — ACTION FOR ACCOUNTING — DECREE — PLEDGE — SUFFICIENCY OF EVIDENCE.

In an action between two partners for an accounting, the court has no authority to make provision for the payment of the individual debt of one of the partners by reason of the fact that he had pledged certain personal property, which had been loaned to the partnership, to the other partner to indemnify him as surety for the payment of such individual debt.

One claiming certain horses as pledgee thereof fails to establish such title in himself by proof that the horses had been delivered to a logging partnership of which he was a member, for its use, and that he had come into possession of the horses as manager of the partnership business, there being no proof that the property had ever been delivered to him as pledgee, although there was proof of an agreement to pledge same to him.

Appeal from Superior Court, King County.— Hon. RICHARD OSBORN, Judge.  Modified.

*Brady & Gay*, for appellant.

The opinion of the court was delivered by

DUNBAR, J.—This action was brought by the plaintiff for the dissolution of the partnership between himself and defendant; for the return to the plaintiff of his own individual and personal property, the use of which he had given to the partnership for the log-

ging of a certain tract of land, and for the appoint- ·
ment of a receiver.

According to the allegations of the complaint the
plaintiff and defendant entered into a contract of co-
partnership on the 1st day of June, 1894. By the
terms of the contract the plaintiff was to furnish
horses and "rigging" necessary for the carrying on
of the logging of a certain tract of land; defendant
was to furnish $1,500 for the purchase of the timber,
and they were to share equally the profits of the busi-
ness. In accordance with the terms of the agreement
the plaintiff did furnish three span of horses, consti-
tuting a logging team. The defendant was the active
manager of the business, but failed to render accounts
to the plaintiff and failed to recognize the rights of
the plaintiff in said co-partnership. That portion of
the answer necessary to be noticed here was to the
effect that on the second day of May, 1894, the plain-
tiff procured defendant and his wife to become sureties
for him upon a certain appeal bond; that soon after
the execution and filing of the said bond the defend-
ant discovered that the plaintiff was in embarrassed
financial circumstances, and that becoming alarmed
for the safety of himself and wife as sureties upon
said bond he demanded of the plaintiff an indemnity
against any loss or damage which he or his wife
might sustain because of the said suretyship; and that
in response to said demand, plaintiff agreed to de-
liver to the defendant eight head of horses as security
to indemnify and save himself and wife harmless from
such loss or damage which they might sustain by
reason of their said suretyship.

The plaintiff moved for the appointment of a re-
ceiver. Upon said motion the court appointed a
receiver to take charge of all the assets of the part-

nership, and also to take charge of the personal property of the plaintiff, the use of which the plaintiff had furnished to said copartnership.

The court, in its findings of fact, found substantially the matters alleged in the complaint, viz., the agreement as alleged; that in accordance with the terms of the agreement the plaintiff furnished the horses and such rigging used with teams necessary for the carrying on of said business, describing the three teams of horses furnished; the fact that the said horses were to be returned to the plaintiff upon the termination of the logging contract; that the defendant refused to recognize the rights of the plaintiff, contrary to the terms and conditions of their agreement; that the defendant attempted to appropriate to his own use certain debts due said copartnership, and the fact that there was owing to the partnership from the defendant the sum of $567.44; and as a conclusion of law decreed that the defendant should pay into said partnership said sum of $567.44, and such additional sum, not to exceed $1,500 (which was the amount advanced by the defendant for the purchase of the timber), as might be necessary to pay all the outstanding debts of the copartnership, and all of the debts and expenses of the receiver of the said business; and that a decree be entered ordering the receiver to deliver back to their respective owners each and all of the personal property delivered by the said parties to the said copartnership, the title to which remained in the said parties, except the three spans of horses, which said horses are to be held for the defendant B. E. Lynch until further order of the court, and to be delivered to him upon the payment by him of the bond described in defendant's answer.

It is earnestly contended by the appellant that the

amount found due by the court from the respondent was not the true amount due, but from an investigation of the record we think we would not be warranted in disturbing this finding. The court, however, made an order that the defendant Lynch have ten days from January 11, 1896, within which to satisfy the claim of the Merchants' National Bank of Seattle (which was the judgment appealed from mentioned in the answer, and for the payment of which respondent had become surety), and that, upon the payment by Lynch of the claim of the Merchants' National Bank, thereupon the receiver should re-deliver the horses above mentioned to enable the respondent Lynch to resort thereto and to the pledge thereof to indemnify him respecting such loss or damage as he might sustain in the satisfaction of said claim. And it was further ordered that, if he failed within said period to satisfy said claim so as to entitle him to the re-delivery of said property as aforesaid, then leave was granted to said Merchants' National Bank, or the receiver thereof in whose possession the assets thereof then were, to take such action as to him should seem meet and proper to satisfy said claim in whole or in part out of the proceeds of the sale by him of said property (viz., the horses aforesaid), and to subject said property to the satisfaction thereof in whole or in part.

This order of the court we think was plainly erroneous and could not be sustained by the facts as found by the court. The Merchants' National Bank is not a party to this action. This was an action of accounting between the appellant and respondent, and we think the court had no authority to make provision for the payment of an individual debt of one of the partners in this action. The order was probably made

42—15 WASH.

on the theory that the property had been pledged by the appellant to the respondent for the payment. of this debt, and that if the appellant were allowed to regain possession of it the respondent would be left without a remedy. But even with that view of the case, all the court, it seems to us, would have the power to do would be to establish the lien of the respondent on this property, to be subjected by him as the law provides; but in no event could the court go so far as to order the property sold and the proceeds applied to the payment of a judgment, the parties to which are not parties to this action and have not appeared therein in any manner. Especially is this true in view of the further finding of the court that this property was exempt from execution, or a finding of the facts which would constitute an exemption. Finding 12 is as follows:

"That the plaintiff is a person engaged in the business of logging for his support and that of his family and that the said three spans of horses, rigging and other articles, the use of which the plaintiff turned into the copartnership of Lynch & Jose, is the only logging team owned by the plaintiff, and by the use of the said three spans of horses as a logging team the plaintiff must earn the support of himself and family."

Neither do the findings of fact nor the testimony in this case show that a delivery of the pledge was ever made by the appellant to the respondent of these horses. The finding of the court in regard to that is as follows:

"That at the time of the execution and delivery of said bond, the plaintiff agreed to deliver to the defendant eight horses as an indemnity to secure the defendant and his wife upon the bond against any loss or damage which they might sustain by reason of becoming sureties on said bond. That the said three

spans of horses were delivered to the firm of Lynch & Jose on or subsequent to the 1st of June, A. D., 1894, and the said B. E. Lynch was managing the said copartnership business, and as such manager of the firm of Lynch & Jose got possession of the said horses and has since held the said horses in his possession as a pledge to secure him upon the said bond."

Now, if the horses were delivered to the firm of Lynch & Jose, they were not delivered to Lynch as a pledge to secure him upon the bond; and as long as he was acting in the capacity of manager for the copartnership, the possession of the horses was in him as manager and not as an individual. It seems to us plain that these horses never were delivered to respondent Lynch, and that, not having been delivered, the appellant was entitled to them under the exemption laws and under the other findings of fact in this case; and that the order of the court both as to the turning of the said horses over to the respondent as an indemnity, and as to subjecting their proceeds to the payment of the judgment formerly obtained against Jose by the Merchants' National Bank, was wrong.

The judgment will, therefore, be reversed with instructions to modify the same as indicated by this opinion, and, as so modified, it will be affirmed. Costs to appellants in this court.

SCOTT and ANDERS, JJ., concur.